THOMAS BENSCOTTER *vs.* MILES W. GREEN and Wife.

*Vendor's lien—Trust created—Impairment of the Security of the Cestuis que trust—Equity practice—Prayer for General relief—Practice under Sec. 28, of Art. 5, of the Code.*

G. and wife in consideration of the conveyance to them by B. and wife of certain real estate agreed in writing, under seal, to support said B. and wife and their daughter A. during their several lives, and to pay all their doctor's bills and other expenses, and to pay B. twenty-five dollars for four years, and also to pay certain debts of B., and at certain periods to pay certain designated sums of money to other persons named; which several sums of money, together with the estimated value of the board and clothing of the persons to be provided for, were computed to amount to $5000. The same sum was named as the consideration in the conveyance from B. and wife to G. and wife. The latter took possession of the property, and proceeded to discharge the duties undertaken by the agreement. On a bill filed by B. and wife charging the non-payment of the consideration money, and praying a sale of the land for the payment thereof, it was HELD:

1st. That the complainants were not entitled to a decree for a sale of the land as prayed for.

2nd. That having accepted the deed from B. and wife under the written agreement, a trust was created, and G. and wife were bound in equity faithfully to perform the duties assumed by them, and the land was properly chargeable with the trust.

3rd. That G. and wife should not be permitted to impair the security of the *cestuis que trust*, for the fulfilment of the several trusts, by the creation of liens beyond such as the Court may adjudge to be authorized by the title given and the objects to be attained.

Under the prayer for general relief, Courts of equity will grant such relief as is consistent with the general object of the bill.

The Court of Appeals will not, under section 28, of Article 5, of the Code, remand a case, without affirmance or reversal, where an entirely new bill would have to be framed, with new allegations and new parties.

APPEAL from the Circuit Court for Caroline County, in Equity.

The case is stated in the opinion of the Court. The appeal was taken from a decree dismissing the bill of the complainants, without prejudice to any future proceedings which they might consider proper to institute.

The cause was argued before MILLER, YELLOTT, ROBINSON, and IRVING, J.

*Bradley S. Johnson,* and *Bradley T. Johnson,* for the appellant.

*Marshall S. Mutchler,* for the appellees.

IRVING, J., delivered the opinion of the Court.

The original bill in this cause charges, that the appellant, on the 22nd of May, 1878, being the owner in fee of certain lands in Caroline County, Maryland, conveyed the same to Miles W. Green and wife, the appellees, who, in consideration thereof, promised to pay or secure to be paid to the complainant the sum of five thousand dollars. This consideration money, the bill charges to be wholly unpaid and overdue, and prayer is made for a sale of the land for the payment thereof. In other words, it is a bill to enforce an alleged vendor's lien. An interlocutory decree seems to have been obtained against the appellees, but within a few days thereafter they obtained leave of the Court to answer, which they did separately and under oath. The answer of each denies, that, at the date of the execution of the deed, the appellant was the owner in equity of the land conveyed by the deed. It is averred in the answers, that on the 3rd of June, 1877, it was agreed to convey them the land in consideration of an agreement in writing, that day made by the appellees, wherein, in consideration of the conveyance of the land

Benscotter *vs.* Green and Wife.

to them, they covenanted to support the complainant, his wife and their daughter Amanda, during their several lives, and to pay all their doctors' bills and other expenses; and to pay the complainant twenty-five dollars for four years, and also to pay certain debts of the complainant, and at certain periods to pay certain designated sums of money to other persons named in the agreement; which several sums of money, together with the estimated value of the board and clothing of the persons to be provided for, were computed to amount to five thousand dollars. The answers aver the faithful performance of the several undertakings in the agreement, and charge, that in the autumn of 1877, the appellees came from their home in Pennsylvania to the farm in Maryland and took possession thereof under the agreement, bringing with them the several persons whom they were to support under the agreement. They admit the execution of the deed in May, 1878, to cure a defect in the attempted conveyance at the time of making the agreement. Subsequent to the filing of the answers the complainant, under leave of the Court, amended his bill charging that the deed was procured from him by fraud and imposition. The amended bill also made Mrs. Benscotter a party complainant. The allegations of the amended bill were denied by the appellees, and general replication was entered. By the amended bill the complainants did not ask to have the deed set aside for fraud, but asked for the relief prayed for in the original bill.

It appears from the proof, that the complainants are old people, and one of them, Thomas Benscotter, was out of health and very infirm. They had lived on this farm in Caroline County and had gone back to Pennsylvania where the appellees also lived. The appellee, Mrs. Miles, is the daughter of the complainants. An agreement in writing, such as was set up in the answers of the defendants (appellees) was entered into as a consideration for the

deed. It was signed and sealed by the appellees, and the complainant, Thomas Benscotter, in return for it, executed an assignment, under advice, in Pennsylvania, from a scrivener there, of his deed for the property in question.

In the autumn of 1877, the appellees left their home in Pennsylvania and came to Maryland and took charge of the farm, bringing the complainants and their daughter with them, whom they have supported ever since. It appears that a similar offer was made of the farm to the other children, but none would undertake it but the appellees.

After coming to the farm and entering into possession, and after proceeding to discharge the duties undertaken by the contract, namely, in the spring of 1878, when the assignment of the deed was taken for record, the appellees were informed that it was not an effective transfer of the property. Consequently the request was made by the appellees for the execution of a deed. This request was complied with, and the deed set up in the bill was made to the appellees. The consideration named therein is five thousand dollars, and the same sum was named as the consideration for the assignment of the deed which was found ineffectual as a transfer of the property. It fully appears from the evidence how this amount of five thoussand dollars was made up. It was partly money agreed to be paid to complainant, and others in various sums designated in the contract, and the money value set upon the support for complainants and their daughter contracted for. That the contract, which was in writing, under seal, and the testimony respecting the part execution of it was admissible, under the circumstances of this case, and the pleading, we think is very clear. The Court below so held; and it was conceded by appellant's counsel in this Court not to be obnoxious to objection by reason of the principles laid down in *Betts vs. Union Bank*, 1 *H. & G.*, 175; *Claggett vs. Hall*, 9 *G. & J.*, 91, and *Cole vs. Albers*,

1 *Gill,* 412. Looking at the whole transaction, in the light of that evidence, it is very evident that the deed was executed to carry out the original agreement and understanding; and we fully agree with the Circuit Court that there is no evidence tending to impeach the deed for fraud or imposition on the part of the appellees in respect to its procurement. It is manifest, that the complainant in the demand of a new agreement for the execution of the deed, was only asking a renewal of the agreement executed for the assignment, which was found ineffective; and that agreement, which he says the appellees promised to give, if necessary, was only a renewal of the original agreement. It never entered into the minds of the parties that five thousand dollars, all in money, was to be paid for the property; and there can be no doubt that the Circuit Court was right in refusing to decree a sale of the land to pay the purchase money on that theory.

It is contended, however, by the appellant's counsel in this Court, that there was, in the conveyance to the appellees under that contract, a trust in favor of the grantors and the other persons interested in the contract, which ought to have been declared by the Court; and that instead of dismissing the bill, the Court, under the prayer for general relief, ought to have declared the true nature of the appellees' holding, and to have retained the bill to enable the requisite amendments to be made to secure full relief. For this reason, and to enable this to be done, it is urged that the decree ought to be reversed, or the cause be sent back without affirmance or reversal, under section 28 of Article 5 of the Code, that substantial justice may be done in the premises. It appears from the evidence that the appellees have executed two mortgages for small amounts on the land and have confessed judgment in one case also. These acts are charged in argument to be in violation of the trust and duty of the appellees, and en-

danger the security of the support for which the complainants were seeking to provide.

We cannot doubt from the proof that the object of the complainants in making the arrangement was to secure, beyond peradventure, first and principally support for themselves and daughter Amanda during the life of each; and secondly, to secure the payment of the moneys mentioned in the agreement. Having accepted the deed, under such written agreement, the appellees in equity are bound faithfully to perform the duties assumed, and the land ought to be charged with that trust. In fact the agreement provides, in terms, that the whole arrangement shall be void on failure of the appellees to do what was agreed to be done by them. We think the transaction does create a trust which ought to be declared. *Story's Equity*, secs. 1197 *and* 1198.

The appellees ought to be held to the faithful performance of all their engagements which formed the consideration for the conveyance. They ought not to be permitted to impair the security of the *cestuis que trust* for the fulfilment of the several trusts, by the creation of liens beyond such as the Court may adjudge to be authorized by the title given and the objects to be attained. What incumbrances it might be allowable to put upon the property for the purpose of effectively executing the trust, if any, we are not called on now to consider. If the parties who hold liens took them with a knowledge of all the facts of the case, no damage has resulted to the complainants, for they take subject to their rights. They are not before us, and we have no evidence on which to pass if they were. But whilst this is our view of the rights of the appellants as against the appellees and the land in their hands, we do not think, under the pleadings, the Court should have done more than was done, viz., to dismiss the bill without prejudice to future proceedings for other relief than was prayed for. Under the prayer for

Benscotter *vs.* Green and Wife.

general relief the uniform practice, in Courts of equity, justifies the granting any relief consistent with the general object of the bill; but the relief, we think the complainants entitled to, is wholly inconsistent with the scope, objects and prayer of original and amended bill. The original bill proceeds on the theory of a valid sale for $5000 in money, and a vendor's lien for its payment, for which the property is asked to be sold. The amended bill charges the deed was procured by fraud, yet inconsistently enough prays for a sale for the vendor's lien, instead of asking the deed to be set aside for fraud. To secure the relief, which we have indicated the transaction justifies being granted, will require an entirely new bill to be framed, with new allegations and new parties. A proceeding *de novo* should be taken. We do not think the interpretation which has been given to the 28th section of Article 5 of the Code calls for the sending this case, inartificial and inconsistent as it is in its pleadings and scope, back without affirmance or reversal, for the purpose of enabling the requisite amendments to be made, to give the appellant proper standing in Court. *McElderry vs. Shipley*, 2 *Md.*, 37. If we did so, an entirely new case would have to be made. Nothing will be gained by it. A new bill will lie against all the parties to be affected by it, and if framed in accordance with the views we have expressed, adequate relief can be secured. The decree dismissing the bill without prejudice to a new proceeding, will be affirmed.

*Decree affirmed,*
*without prejudice.*

(Decided 20th June, 1883.)